Peter **BRINCKERHOFF**, Individually and As Trustee of the Peter R. Brinckerhoff Rev. TR U A DTD 10/17/97, Plaintiff Below, Appellant,

v.

**ENBRIDGE ENERGY COMPANY, INC.; Enbridge, Inc.; Enbridge Energy Management, L.L.C.; Enbridge Employee Services, Inc.; Martha O. Hesse, Jeffrey A. Connelly, Dan Westbrook, George K. Petty, Stephen J.J. Letwin, Terrence L. McGill and Stephen J. Wuori, Defendants Below, Appellees,**

and

**Enbridge Energy Partners, L.P., Nominal Defendant Below, Appellee.**

No. 574, 2011.

Supreme Court of Delaware.

Submitted: Dec. 12, 2012.

Decided: May 28, 2013.

Joseph A. Rosenthal, Esquire and Jessica Zeldin, Esquire, Rosenthal, Monhait & Goddess, P.A., Wilmington, Delaware, Of Counsel: Lawrence P. Eagel, Esquire (argued), Jeffrey H. Squire, Esquire, Bragar

---

Eagel & Squire, P.C., New York, New York, for Appellant.

William M. Lafferty, Esquire, Thomas W. Briggs, Jr., Esquire and D. McKinley Measley, Esquire, Morris, Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, Of Counsel: Kevin C. Logue, Esquire (argued) and Kevin P. Broughel, Esquire, Paul Hastings LLP, New York, New York, for Appellees Enbridge Energy Company, Inc., Enbridge Energy Management, L.L.C., Enbridge Energy Partners, L.P., Martha O. Hesse, Jeffrey A. Connelly, Dan Westbrook and Terrance L. McGill.

Raymond J. DiCamillo, Esquire and Kevin M. Gallagher, Esquire, Richards, Layton & Finger, P.A., Wilmington, Delaware, Of Counsel: Michael H. Steinberg, Esquire (argued) and Orly Z. Elson, Esquire, Sullivan & Cromwell LLP, Los Angeles, California, for Appellees Enbridge, Inc., Enbridge Employee Services, Inc., George K. Petty, Stephen J.J. Letwin and Stephen J. Wuori.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

BERGER, Justice:

In this appeal we consider whether the Court of Chancery erred in dismissing a derivative and class action complaint against the general partner and other managers of a limited partnership. The governing limited partnership agreement provides that appellees have no liability for money damages as long as they act in good faith. The Court of Chancery dismissed the complaint because it fails to allege facts that would support a finding of bad faith. After remand, the Court of Chancery held that appellants waived their alternative claims for reformation or rescission. We affirm.

**Factual and Procedural Background**

Peter Brinckerhoff and his trust hold limited partnership units of Enbridge Energy Partners, L.P. (EEP), a publicly traded Delaware limited partnership in the business of energy transportation. Enbridge Energy Company, Inc. ("GP"), a Delaware corporation, is EEP's general partner. It delegated to Enbridge Energy Management, L.L.C. (Manager), a Delaware limited liability company, the power and authority to manage EEP. Enbridge, Inc. (Enbridge), a Canadian corporation, indirectly owns 100% of GP. Enbridge Employee Services, Inc. (EES), a Delaware corporation, is wholly owned by Enbridge. EES employs all the employees of EEP, GP, and Manager.

EEP was formed in 1991 to own and operate the U.S. portion of Lakehead, a crude oil and liquid petroleum pipeline that extends from Alberta, Canada through the Great Lakes region of the United States to Eastern Canada. Enbridge owns the Canadian portion of Lakehead. Sometime before March 2009, EEP decided to pursue the construction and operation of the U.S. portion of a pipeline from Hardisty, Alberta to Superior, Wisconsin. The U.S. portion of the plan, called the Alberta Clipper project (ACP), was a $1.2 billion undertaking. Originally, EEP planned to fund the project itself. The 2008–2009 financial crisis, however, made it difficult for EEP to finance the ACP alone.

In March 2009, Enbridge proposed a joint venture agreement (JVA) under which Enbridge would fund a portion of the cost of the ACP and the two entities would share profits based solely on their respective capital contributions. Under this arrangement, Enbridge would not have to pay EEP anything for the work it had accomplished before the JVA or the $100 million EEP had spent on the ACP.

In response to Enbridge's proposal, GP's board of directors formed a three member special committee, which was instructed to decide whether the JVA was fair and reasonable to EEP, and to make a recommendation to the Board. The special committee was not instructed to consider alternatives, but only to review the proposed terms and negotiate on behalf of EEP.

The special committee hired legal advisors and a financial advisor—Tudor Pickering Holt & Co. (Tudor). At its first meeting, in early April 2009, Enbridge's CFO explained the proposed structure of the JVA. Shortly after that meeting, Enbridge sent the special committee a term sheet. At its second meeting, at the end of April, the special committee concluded that it did not have much negotiating leverage since the ACP was already underway. In May, Tudor advised the special committee to retain as much equity in the ACP as possible. The special committee responded by changing EEP's percentage of ownership from 25% to 33 1/3%. In July 2009, the special committee met for the last time. Despite the fact that capital markets appeared to be improving by then, the special committee never discussed negotiating better terms. Tudor opined that the terms of the JVA "are representative, in all material respects, of those that would have been obtained by [EEP] in an arm's length transaction." [1]

The special committee recommended that EEP proceed with the JVA, and GP's board accepted that recommendation by a resolution adopted on July 17, 2009. Construction of the ACP was completed in April 2010. Brinckerhoff filed this action one month later. The Corrected Amended Class and Derivative Complaint consists of four counts. Count I alleges that appellees breached express and implied duties under the EEP Limited Partnership Agreement (LPA) by causing EEP to enter into the JVA on terms that were not fair or reasonable. Count II alleges that appellees, other than GP, aided and abetted GP's breach of duties. Count III alleges that appellees breached the implied covenant of good faith and fair dealing. Count IV alleges tortious interference and unjust enrichment claims against Enbridge and EES.[2] Appellees moved to dismiss, and the Court of Chancery granted that motion. After Brinckerhoff appealed, this Court remanded for the Court of Chancery to consider Brinckerhoff's claims for reformation and rescission. The Court of Chancery held that Brinckerhoff waived those claims, and that the rescission claim fails, in any event. This is the decision on the original appeal and the remand.

## Discussion

The primary issue on appeal is whether the terms of the LPA bar Brinckerhoff's claims. Article VI governs the management and operation of the partnership. Section 6.1 authorizes GP to exercise full control over all partnership activities, subject to certain limitations in the case of a merger, sale of all or substantially all of the assets, and other similar events. Section 6.6 controls the manner in which GP and its affiliates may engage in self-interested transactions. The transactions must be, "fair and reasonable to the Partnership," and the fair-and-reasonable requirement is satisfied, "as to any transaction the terms of which are no less favorable to the Partnership than those generally being

---

1. Appellant's Appendix, A–45.

2. Brinckerhoff did not appeal the dismissal of Counts II and IV.

provided to or available from unrelated third parties."[3]

The LPA indemnifies GP and its affiliates, and indemnitees may not be held liable for money damages "for losses sustained or liabilities incurred as a result of any act or omission if such [i]ndemnitee acted in good faith."[4] GP is accorded a conclusive presumption of good faith if it relies on the opinion of a consultant, as long as GP reasonably believes that the opinion is within the consultant's "professional or expert competence."[5] GP's affiliates are not protected by a conclusive presumption of good faith.

Reading these provisions together, the Court of Chancery concluded that all of the appellees were protected from monetary liability as long as they acted in good faith. The complaint alleges that the terms of the JVA, and the manner in which it was negotiated and approved, demonstrate that appellees acted in bad faith. For example: 1) the JVA did not compensate EEP for "already owning the project, for having the exclusive right to build the U.S. portion of the pipeline, for obtaining the necessary permits, negotiating the tariff arrangements, . . . or . . . having already spent $150 million on the project"[6]; 2) Tudor was retained only to render an opinion as to whether the JVA terms were representative of an arms-

length transaction—it was not asked to opine whether the JVA was fair and reasonable[7]; 3) EEP agreed to pay Tudor $450,000, but only if Tudor delivered an opinion in accordance with the retainer letter[8]; and 4) the special committee never engaged in hard bargaining, and neither the special committee nor EEP made any effort to market the ACP to third parties[9].

Reviewing these allegations as applied to the claims against GP, the trial court noted that the special committee retained Tudor, and that Tudor opined that the terms of the JVA were representative of an arms-length transaction. Based on those facts, the Court of Chancery found that GP "is conclusively presumed to have acted in good faith ... and ... Brinckerhoff has failed to meet his burden of pleading facts suggesting bad faith."[10] The other appellees do not have the benefit of a conclusive presumption, but the Court of Chancery held that the complaint failed to allege bad faith on their part. The trial court also dismissed the claim for breach of the implied covenant of good faith and fair dealing because the LPA expressly addresses the events at issue.[11]

The Court of Chancery dismissed Brinckerhoff's claims on the basis that the LPA protected all appellees from liability for money damages. A question arose, however, as to whether Brinckerhoff's

3. Appellant's Appendix, A–125, Partnership Agreement, § 6.6(c), (e).

4. Appellant's Appendix, A–127, Partnership Agreement, § 6.8(a).

5. Appellant's Appendix, A–129, Partnership Agreement, § 6.10(b).

6. Appellant's Appendix, A–27, Complaint ¶ 53.

7. Appellant's Appendix, A–28, Complaint ¶ 56.

8. *Ibid.*

9. Appellant's Appendix, A–30, Complaint ¶ 60.

10. *Brinckerhoff v. Enbridge Energy Co., Inc., et al.*, 2011 WL 4599654, at *9 (Del.Ch.).

11. Brinckerhoff does not really challenge this holding. In one paragraph he says that the complaint did plead bad faith, and that a partnership agreement may not eliminate the implied covenant. This type of "throw away" argument is not sufficient to gain any traction.

claims for rescission or reformation remain viable. After remand by this Court, the Court of Chancery decided that Brinckerhoff waived those claims.

Brinckerhoff argues that the Court of Chancery erred by failing to give his complaint the benefit of inferences that appellees acted in bad faith. But inferences are not enough to transform a complaint about the terms of the JVA and Tudor's performance into a claim of bad faith. To state a claim based on bad faith, the decision to enter into the JVA, under the circumstances, must be "so far beyond the bounds of reasonable judgment that it seems essentially inexplicable on any ground other than bad faith."[12] The complaint does not directly or by inference satisfy that standard.

The remaining question is whether Brinckerhoff waived his reformation and rescission claims. We find that he did for the reasons stated by the Court of Chancery in its opinion on remand. Having decided that the equitable claims were waived, we do not reach the merits of those claims.

Finally, we note that the Court of Chancery did not rest its decision solely on the LPA's conclusive presumption that GP acted in good faith. The trial court did find that GP had satisfied the prerequisites for the conclusive presumption, but it went on separately to hold that the complaint failed to allege facts suggesting that GP acted in bad faith. Accordingly, this is not the case in which to address any questions as to the effectiveness of a conclusive presumption—either to preclude or limit judicial review.

12. *Parnes v. Bally Entertainment Corp.*, 722 A.2d 1243, 1246 (Del.1999) (Quotation and citation omitted).

## Conclusion

Based on the foregoing, the decisions of the Court of Chancery are hereby affirmed.