IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| HUGH F. CULVERHOUSE, individually and on behalf of all others similarly situated, | § § § | No. 349, 2015 |
| | § | |
| | § | Certification of Question of Law |
| Plaintiff-Appellant, | § | from the United States Court of |
| | § | Appeals for the Eleventh Circuit |
| v. | § | |
| | § | Docket No. 14-14526 |
| PAULSON & CO. INC. and PAULSON ADVISERS, LLC, | § § | |
| | § | |
| Defendants-Appellees. | § | |

Submitted: January 13, 2016
Decided: January 26, 2016

Before **STRINE**, Chief Justice; **HOLLAND**, **VALIHURA**, **VAUGHN**, and **SEITZ**, Justices, constituting the Court *en Banc*.

Upon Certification of Question of Law from the United States Court of Appeals for the Eleventh Circuit: **CERTIFIED QUESTION ANSWERED**.

Richard L. Renck, Esquire, Duane Morris LLP, Wilmington, Delaware, Of Counsel: Robert M. Palumbos, Esquire (*argued*), Duane Morris LLP, Philadelphia, Pennsylvania, Harvey W. Gurland, Jr., Esquire, Felice K. Schonfeld, Esquire, Duane Morris LLP, Miami, Florida, Lawrence A. Kellogg, Esquire, Jason Kellogg, Esquire, Levine Kellogg Lehman Schneider & Grossman LLP, Miami, Florida, for Plaintiff Below-Appellant, Hugh Culverhouse.

Gregory E. Stuhlman, Esquire, Greenberg Traurig, LLP, Wilmington, Delaware, Of Counsel: Richard A. Edlin, Esquire (*argued*), Greenberg Traurig, LLP, New York, New York, for Defendants Below-Appellees, Paulson & Co. Inc. and Paulson Advisers, LLC.

**SEITZ**, Justice:

The United States Court of Appeals for the Eleventh Circuit has certified the following question of law arising out of an appeal from a decision by the United States District Court for the Southern District of Florida:

> Does the diminution in the value of a limited liability company, which serves as a feeder fund in a limited partnership, provide a basis for an investor's direct suit against the general partners when the company and the partnership allocate losses to investors' individual capital accounts and do not issue transferrable shares and losses are shared by investors in proportion to their investments?[1]

The Eleventh Circuit certified the question of law to this Court due to a perceived tension between our decision in *Tooley v. Donaldson, Lufkin & Jenrette*[2] and the Delaware Court of Chancery's earlier decision in *Anglo American Security Fund, L.P. v. S.R. Global International Fund, L.P.*[3]  Having carefully considered the certified question of law, we answer in the negative.

**Supreme Court Rule 41**

Supreme Court Rule 41 governs certification of questions of law.  As we recently observed, "Rule 41(b) contemplates that a certification will pose a specific question of law, based on a stipulated set of facts.  This approach allows us to focus on a relevant question of Delaware law against a backdrop of established facts which are not the subject of dispute among the parties."[4]  The parties before us never agreed to a stipulated set of facts.  They have filled the vacuum in this Court by supplementing the record transmitted by the Eleventh Circuit with documents and argument under the guise of

---

[1] *Culverhouse v. Paulson & Co.*, 791 F.3d 1278, 1281 (11th Cir. 2015).
[2] 845 A.2d 1031, 1039 (Del. 2004).
[3] 829 A.2d 143 (Del. Ch. 2003).
[4] *Espinoza v. Dimon*, 124 A.3d 33, 36 (Del. 2015).

2

being "helpful" or providing "context." We reiterate the need for a stipulated set of facts to accompany certified questions of law to avoid confusion over disputed and undisputed facts. From the certification opinion and the record transmitted by the Eleventh Circuit, we are able to discern the following undisputed facts.

**The Parties And Fund Structure**

Paulson Advantage Plus, L.P., who we will call the "Investment Fund," is a Delaware limited partnership that invests in corporate securities. Paulson Advisers, LLC, a Delaware limited liability company, and Paulson & Co., a Delaware corporation, who we will call the Investment Fund Managers, are the general partners and managers of the Investment Fund. One of the Investment Fund's limited partners is HedgeForum Paulson Advantage Plus, LLC, who we will call the "Feeder Fund." The Feeder Fund is managed and sponsored by Citigroup Alternative Investments, LLC. AMACAR CPO, Inc. is the Feeder Fund's managing member.

Along with other investors, Culverhouse is a member of the Feeder Fund, not a limited partner in the Investment Fund. As its name implies, a feeder fund collects investors to invest in the feeder fund, which in turn "feeds" such funds into a master fund, where the investment managers direct the investments in the master fund portfolio. The feeder/master fund structure, common to large or exclusive hedge funds, allows investors who cannot or choose not to meet the direct investment minimum capital requirements of

3

the master fund to aggregate their smaller investments and gain access to the master fund.[5]

**The Federal Court Proceedings**

Culverhouse filed a putative class action against the Investment Fund Managers in the United States District Court for the Southern District of Florida. The first amended complaint alleges that between 2007 and 2011, the Investment Fund invested about $800 million in the Sino-Forest Corporation, a Chinese Forestry Company. Following another investment firm's report claiming that Sino-Forest had overstated its timber holdings and engaged in questionable related-party transactions, the Investment Fund sold its Sino-Forest holdings for about a $460 million loss. On behalf of himself and others "who held limited partnership interests in the [Investment Fund]," or "invested in one of its many 'pass-through' feeder hedge fund platforms," Culverhouse alleged breach of fiduciary duty, gross negligence, and unjust enrichment against the Investment Fund Managers resulting from the Investment Fund's loss from its Sino-Forest holdings.[6]

---

[5] *See Kuroda v. SPJS Holdings, L.L.C.*, 2010 WL 4880659, at *1 (Del. Ch. Nov. 30, 2010) (describing feeder fund as the vehicle by which investors invested in the master fund); *Fund Director's Guidebook*, 52 BUS. LAW. 229, 252-53 (1996) ("An alternative to the single (or one-tier) fund with multi-classes is the master-feeder structure in which one or more funds ('feeder funds') invest all of their assets in another fund ('master fund')."); *see also* Henry Ordower, *Demystifying Hedge Funds: A Design Primer*, 7 U.C. DAVIS BUS. L.J. 323, 344-45 (2007) (discussing master-feeder fund structures).

[6] App. to Answering Br. at 1 (Class Action Compl. ¶ 1). In his initial class action complaint, Culverhouse pled that he "executed the [LPA] of [the Investment Fund] and became a limited partner" and that he "held limited partner interests in the [Investment Fund]." He also attached an unsigned copy of the LPA as an exhibit to the initial complaint. After the Investment Fund Managers challenged that contention in their motion to dismiss, Culverhouse removed from the first amended complaint the references to being a limited partner in the Investment Fund and instead pled that he "held a limited liability company interest in [the Feeder Fund]." *Id*. at 61, 64

4

The Investment Fund Managers moved to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. They argued that Culverhouse was an investor only in the Feeder Fund, and not the Investment Fund. Culverhouse therefore did not state a claim against the Investment Fund Managers because the Investment Fund did not owe him or the putative class any duties, fiduciary or otherwise. They also argued that Culverhouse lacked standing because his claims in the first amended complaint were derivative under Delaware law. The district court decided the claims were derivative, and dismissed the complaint for lack of standing under Federal Rule of Civil Procedure 12(b)(1). The district court did not decide whether Culverhouse failed to state a claim under Rule 12(b)(6).

On appeal of the dismissal for lack of standing, the United States Court of Appeals for the Eleventh Circuit determined that resolution of the appeal depended on an unsettled issue of Delaware law. The Eleventh Circuit discussed our decision in *Tooley*, which established a two-part test for determining whether a claim is direct or derivative. The court also discussed the Delaware Court of Chancery's decision in *Anglo American*, which preceded *Tooley* by six months. In *Anglo American*, the Court of Chancery denied a motion to dismiss filed by a hedge fund's general partner, and found that the former limited partners stated direct diminution of value claims stemming from the general partner's overdraw of his capital account.

---

(Class Action Compl. ¶¶ 1, 15); CD of the Record from the Eleventh Circuit at 59 (First Amended Compl. ¶ 9).

The Eleventh Circuit acknowledged some of the factual similarities between the structures of the Investment Fund and the Feeder Fund, and the hedge fund in *Anglo American*. But the Eleventh Circuit noted that the rule established in *Tooley* made it "hesitant to hold that *Anglo American* controls this appeal."[7] It further observed that the United States District Court for the Southern District of New York has similarly questioned "whether *Anglo American* remains good law after *Tooley*."[8] Accordingly, our distinguished colleagues have asked this Court for guidance on the issue.

## Certified Question Of Law Answered

This Court in *Tooley* established a two part test to answer the direct/derivative question. Whether a claim alleged in a complaint is direct or derivative turns solely on "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)?"[9] To answer the question, the reviewing court must look to the body of the complaint and consider the nature of the wrong alleged and the relief requested. The plaintiff must demonstrate that "the duty breached was

---

[7] *Culverhouse*, 791 F.3d at 1281.

[8] *Id.* (citing *Newman v. Family Mgmt. Corp.*, 748 F. Supp. 2d 299, 314 n.12 (S.D.N.Y. 2010); *Saltz v. First Frontier, LP*, 782 F. Supp. 2d 61, 78 n.15 (S.D.N.Y. 2010)).

[9] *Tooley*, 845 A.2d at 1033. The *Tooley* direct/derivative test is "substantially the same" for claims involving limited partnerships. *Elf Atochem N. Am., Inc. v. Jaffari*, 727 A.2d 286, 294 n.40 (Del. 1999) ("[T]he determination of whether a fiduciary duty lawsuit is derivative or direct in nature is substantially the same for corporate cases as it is for limited partnership cases.") (quoting *Litman v. Prudential-Bache Props. Inc.*, 611 A.2d 12, 15 (Del. Ch. 1992)); *In re El Paso Pipeline Partners, L.P.*, 2015 WL 7758609, at *23 (Del. Ch. Dec. 2, 2015) ("Generally speaking, the test for distinguishing between direct and derivative claims in the limited partnership context is substantially the same as in the corporate context.") (citing *Brinckerhoff v. Enbridge Energy Co.*, 2011 WL 4599654, at *5-6 (Del. Ch. Sept. 30, 2011), *aff'd*, 67 A.3d 369 (Del. 2013); *Anglo American*, 829 A.2d at 149-50).

6

owed to the [investor] and that he or she can prevail without showing an injury to the [entity]."[10]  The answer to the second part of the *Tooley* test "should logically follow" from the first.[11]

Applying the undisputed facts to the certification request, we find that Culverhouse fails to meet both parts of the *Tooley* test.  To the extent not waived by the terms of the agreements specific to each fund, the Investment Fund Managers owe fiduciary duties to the investors who invested directly in the Investment Fund, including the Feeder Fund.[12]  But Culverhouse chose not to invest directly in the Investment Fund.  Instead, Culverhouse invested in the Feeder Fund, which in turn invested in the Investment Fund.  The alleged harm flowing from the Investment Fund's losses would not in the first instance be suffered by Culverhouse.  Culverhouse also would not in the first instance receive the benefit of any recovery.  Under the *Tooley* test, Culverhouse's claims are derivative.[13]

The Court of Chancery's decision in *Anglo American* is distinguishable based on its facts.  In *Anglo American*, the limited partners did not invest through a feeder fund.

[10] *Tooley*, 845 A.2d at 1039.
[11] *Id.* at 1036.
[12] *See Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 817 A.2d 160, 170 (Del. 2002) ("[A] general partner owes the traditional fiduciary duties of loyalty and care to the limited partnership and its partners, but [the Delaware Limited Partnership Act] 'expressly authorizes the modification, or enhancement of these fiduciary duties in the written agreement governing the limited partnership.'") (quoting *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.*, 2000 WL 1476663, at *10 (Del. Ch. Sept. 27, 2000)); *see also Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 WL 3505355, at *30 (Del. Ch. Aug. 8, 2011) ("[A] director, member, or officer of a corporate entity serving as the general partner of a limited partnership . . . who exercises control over the partnership's property owes fiduciary duties directly to the partnership and its limited partners.") (dealing with fund managers).
[13] Culverhouse's claims could be viewed as double derivative in that Culverhouse seeks to assert claims on behalf of the Investment Fund, through the Feeder Fund.

They had a direct relationship with the investment fund and its manager. By contrast, Culverhouse and other Feeder Fund investors chose not to invest directly with the Investment Fund. Their legal relationship existed only with the Feeder Fund.

The separateness of the Feeder Fund and Investment Fund is not a detail to be disregarded simply because the Feeder Fund acts as a pass-through entity, and does not issue transferrable shares. "Delaware courts take the corporate form and corporate formalities very seriously . . . ."[14] Each fund has its own governing agreements spelling out the rights and obligations of the fund and its investors. To ignore these operative agreements would upset the contractual expectations of the investors and the managers of each fund.[15] It would also unjustifiably call into question the vitality of the same type of foundational agreements in the established feeder/master fund investment model. Culverhouse and the class he purports to represent must look to the Feeder Fund and his contractual or fiduciary relationship with it and its managers, not the Investment Fund Managers, to address any dissatisfaction with investment losses by the Investment Fund.

---

[14] *Case Fin., Inc. v. Alden*, 2009 WL 2581873, at *4 (Del. Ch. Aug. 21, 2009).

[15] *See* 6 *Del. C.* § 17-1101(c) ("It is the policy of [the LP Act] to give maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements."); *Elf Atochem*, 727 A.2d at 290 ("The policy of freedom of contract underlies . . . the LP Act."); 6 *Del. C.* § 18-1101(b) ("It is the policy of [the LLC Act] to give the maximum effect to the principle of freedom of contract and to the enforceability of limited liability company agreements."); *Olson v. Halvorsen*, 986 A.2d 1150, 1160 (Del. 2009) (Delaware LLC Act seeks to give maximum effect to the principle of freedom of contract and enforceability of LLC agreements).

In the initial subscription agreement and confidential memorandum accompanying Culverhouse's investment in the Feeder Fund, Culverhouse clearly acknowledged or agreed he was not an investor in the Investment Fund and could not assert claims against the Investment Fund and its defined affiliates. *See* App. to Answering Br. at 39 (Initial Subscription Agreement at 9 (Section V(A) (Indemnification and Other Matters))); CD of the Record from the Eleventh Circuit at 542, 558-60 (Confidential Memorandum of the Feeder Fund at 16, 32-34).

## Conclusion

We answer the certified question in the negative. The Clerk is directed to transmit this opinion to the Eleventh Circuit.