**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: November 22, 2021
Date Decided: January 31, 2022

Blake Rohrbacher, Esquire
Kevin M. Gallagher, Esquire
Alexander M. Krischik, Esquire
Christian C.F. Roberts, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE 19801

Mr. Ercin Eksin
Mennica Legacy Tower
Prosta 20
Warszawa, 00-850
Poland
ercineksin@gmail.com

Re: *Lidya Holdings Inc., et al. v. Ercin Eksin*
C.A. No. 2021-0110-JRS

Dear Counsel and Mr. Eksin:

This Letter Opinion addresses a motion to dismiss counterclaims brought by Ercin Eksin against Lidya Holdings Inc. ("Lidya" or the "Company"), Accion International, Omidyar Network Fund LLC, Flourish Ventures and Bamboo Capital (together, excluding Lidya, the "Investor Defendants" and, with Lidya, "Counterclaim Defendants"). For the reasons stated below, all counterclaims against the Investor Defendants must be dismissed. Counts 1, 2, 3, 4 and 6 of the counterclaims against Lidya must also be dismissed. With respect to the motion to

dismiss Count 5 against Lidya, the Court requires supplemental submissions before addressing that claim.

"In deciding a motion to dismiss under Rule 12(b)(6), a trial court must accept as true all of the well-pleaded allegations of fact and draw reasonable inferences in the plaintiff's favor."[1]  The complaint—and only the complaint— "generally defines the universe of facts that the trial court may consider in ruling on a Rule 12(b)(6) motion to dismiss."[2]  As discussed below, Eksin has strayed well beyond the pleadings in his bid to avoid dismissal of the counterclaims.[3]  Even after allowing him more liberty to deviate from settled pleading standards to account for

---

[1] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006).

[2] *Id.*

[3] In his response to the motion to dismiss, Eksin alleged new facts and attached several new exhibits.  *See* Pls./Counter-Defs.' Reply Br. in Further Supp. of Their Mot. to Dismiss Countercls. ("CDRB") (D.I. 62) at 6–7 (detailing additional facts and exhibits added in Eksin's response).  As Counterclaim Defendants point out, "it is impermissible to attempt to amend one's pleading through a brief."  *Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *25 (Del. Ch. Dec. 19, 2017), *aff'd*, 195 A.3d 16 (Del. 2018) (TABLE); CDRB at 5 (quoting *Charney*).  Because Eksin chose to respond to the motion to dismiss instead of amending his claims under Court of Chancery Rule 15(aaa), I may consider only the allegations in the Verified Counterclaims.  *See* Ct. Ch. R. 15(aaa).

his status as a *pro se* litigant, as discussed below, I cannot conclude that he has stated viable claims. My reasoning follows.

## I. BACKGROUND

I take the facts from Eksin's counterclaims, accept all well-pled allegations as true, and draw all reasonable inferences in Eksin's favor.[4]

### A. The Parties

Eksin is a co-founder, shareholder, director and former co-CEO of Lidya.[5] Lidya is a fintech company that provides loans to small and medium-sized businesses to finance their working capital needs, particularly in emerging economies where traditional financing opportunities are limited and costly.[6] It has grown rapidly and now operates in several countries.[7]

---

[4] *See In re Gen. Motors (Hughes)*, 897 A.2d at 168 (citing *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002)).

[5] Verified Countercls. Against Counter-Defs. ("Counterclaim") (D.I. 49) ¶ 1.

[6] Counterclaim ¶¶ 21, 25.

[7] Counterclaim ¶¶ 31–33.

In 2017 and 2018, Lidya conducted several private placements of its stock to outside investors.[8]  The Investor Defendants acquired their Lidya shares in one of these financing rounds and, in doing so, gained control of three of the five board seats on Lidya's Board of Directors (the "Board").[9]  The then-co-CEOs, Eksin and Tunde Kehinde, controlled the other two Board seats.[10]

## B. Eksin Removed as Co-CEO

Disagreements with an employee and with the Board led to Eksin's removal as co-CEO on January 21, 2021.[11]  Specifically, Eksin clashed with an employee "who was connected with and previously worked at Accion," one of the Investor Defendants represented on the Board, over her "demand for unearned incentives."[12]

---

[8] Counterclaim ¶ 43.

[9] Counterclaim ¶¶ 44, 48.

[10] Counterclaim ¶¶ 45, 48.

[11] Counterclaim ¶¶ 96–102.

[12] Counterclaim ¶ 74.  Eksin alleges that "this employee continues to have close connections with Accion and one of the Board Director [sic] of Lidya, Ms. Lewis." Counterclaim ¶ 75.

This employee later accused Eksin of harassment.[13] The Board formed a special committee to investigate the claim, "during which Eksin was not [] provided a meaningful opportunity to respond."[14]

Concerned about the Board's apparent sabotage of his attempts to make additional investments in Lidya, Eksin contacted the Board and questioned its support, hoping to engage in a dialogue about the future of the Company.[15] This contact was met with a month of silence, after which the Board asked Eksin to step down as co-CEO.[16] When Eksin and the Board could not agree on a mutually acceptable buy-out arrangement, the Board voted to remove Eksin as co-CEO "for cause," relying on the harassment claim and a determination that Eksin's behavior was "unprofessional" and "bullying."[17]

---

[13] Counterclaim ¶¶ 72, 74.

[14] Counterclaim ¶¶ 78–79.

[15] Counterclaim ¶¶ 84–85.

[16] Counterclaim ¶ 85.

[17] Counterclaim ¶¶ 99–102. Eksin surmises that these characterizations referred to "Eksin's engagement of counsel to represent Eksin's interest against the Investor Defendants' attacks." Counterclaim ¶ 101.

Eksin alleges that the employee with whom he had clashed "collaborated with Investor Defendants and Directors of Lidya appointed by the Investor Defendants to create the means for Investor Defendants to gain control over the Company."[18]  In other words, the harassment claim was part of a contrived scheme to remove him as co-CEO after he questioned the Board's commitment to Lidya.[19]

### C. Procedural History

This action began when Plaintiffs, Lidya, Accion Gateway Fund L.L.C., Accion Venture Lab LP, Flourish Venture Fund LLC, Bamboo Financial Inclusion Fund II, S.A., Sicav-Sif, Ashley Lewis, Ameya Upadhyay and Christian Ruehmer, moved for a preliminary injunction to prevent Eksin from pursuing an emergency arbitration against them.[20]  Eksin removed the action to federal court, but the federal court remanded the case back to this Court.[21]  After briefing and argument, I granted

---

[18] Counterclaim ¶ 76.

[19] Counterclaim ¶¶ 80, 104–05.

[20] Verified Compl. for Injunctive Relief ("Compl.") (D.I. 1) ¶ 1.

[21] D.I. 36.

the motion for a preliminary injunction in part and denied it in part.[22]  Eksin's

counsel withdrew, and Eksin, proceeding *pro se*, filed a Verified Counterclaim

against the Counter-Defendants that draws heavily from his enjoined demand for

arbitration.[23]  Importantly, except for Lidya, the Counter-Defendants are not

Plaintiffs in this action.[24]

Counter-Defendants move to dismiss the Verified Counterclaim under

Chancery Rules 12(b)(2), (4), (5) and (6).[25]  For the reasons stated below, that

motion must be granted with prejudice as to all counts against the Investor

Defendants.[26]  Counts 1, 2, 3, 4 and 6 against Lidya are also dismissed with

---

[22] D.I. 40.

[23] The Court's preliminary injunction prevented Eksin from pursuing in arbitration each of the claims he now brings in his Counterclaim.  D.I. 40.

[24] *Compare* Compl. (listing plaintiffs as "Lidya Holdings Inc.; Accion Gateway Fund L.L.C.; Accion Venture Lab LP; Flourish Venture Funds LLC; Bamboo Financial Inclusion Fund II S.A., SICAV-SIF; Ashley Lewis; Ameya Upadhyay; and Christian Ruehmer") *with* Counterclaim (bringing claims against Lidya Holdings Inc.; Accion International; Flourish Ventures; Bamboo Capital; and Omidyar Network Fund LLC).

[25] Pls. and Counter-Defs.' Mot. to Dismiss Countercls. (D.I. 53).

[26] Eksin chose to file a response to the Motion to Dismiss instead of amending his pleading.  Rule 15(aaa) demands that any dismissal be with prejudice. *See* Ct. Ch. R. 15(aaa) ("In the event a party fails to timely file an amended complaint or

prejudice. As explained below, the Court requires supplemental briefing before it can decide the motion to dismiss Count 5.[27]

## II. ANALYSIS

Most of the counterclaims brought by Eksin fail both as a matter of process and as a matter of law. I address the grounds for dismissal in turn below.

### A. Improper Service and Lack of Personal Jurisdiction

Under Delaware law, "[a]lthough *pro se* litigants are afforded some leniency in presenting their cases, . . . *pro se* litigants must abide by the same rules that apply to all other litigants."[28] One of those fundamental rules requires that a party seeking

---

motion to amend under this subsection (aaa) and the Court thereafter concludes that the complaint should be dismissed under Rule 12(b)(6) . . . , such dismissal shall be with prejudice . . . .").

[27] I note that, just before oral argument, the emergency arbitrator held that (1) Eksin was to be reinstated as a director, (2) the implied covenant of good faith and fair dealing in an Amended and Restated Voting Agreement guaranteed Eksin all concomitant rights to his directorship, (3) Eksin was not entitled to emergency relief regarding his claim of breach of an Investors' Rights Agreement against Lidya for not purchasing D&O insurance because the harm was remediable through money damages and therefore not irreparable– irreparable harm being a prerequisite for "emergency" arbitration. D.I. 66.

[28] *Hayward v. King*, 127 A.3d 1171, 2015 WL 6941599, at *4 (Del. 2015) (TABLE); *see also Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001) ("There is no different

to pursue claims in this court must properly effect service of process on his adversary.[29]  Indeed, this court lacks personal jurisdiction over any defendant (or counterclaim defendant) not properly served with process.[30]

In this case, Eksin has failed to demonstrate that he properly served the Investor Defendants with process.[31]  This alone is fatal to his claims against them.

---

set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff.").

[29] *See Slawik v. State*, 480 A.2d 636, 645 (Del. 1984) ("A rudiment of procedural due process is the right to receive notice [through service of process]. . . .").

[30] *Thomas v. Nationstar Mortg., Inc.*, 2015 WL 5766775, at \*2 (Del. Ch. Sept. 18, 2015) *adopted*, 2015 WL 5786135 (Del. Ch. Oct. 1, 2015) ("Court of Chancery Rule 12(b)(5) requires dismissal of a complaint for improper service of process.  It is fundamental that the Court only may exercise personal jurisdiction over a defendant when service of process is properly effected, regardless of whether or not actual notice is achieved.  Personal jurisdiction must be effected through proper service of process, and actual notice by a defendant does not satisfy this constitutional requirement.  When service is defective, it is no excuse that the plaintiff has acted in good faith to perfect service.  The plaintiff bears the burden of demonstrating that service of process was effective.") (internal quotation marks and footnotes omitted).

[31] *See* Pls./Counter-Defs.' Opening Br. in Supp. of Their Mot. to Dismiss Countercls. (D.I. 58) at 15 ("No summons instructions appear on the docket.  No summonses have been issued by the Court.  No returns of service have been filed.  Accordingly, Eksin has failed to make these entities part of this action.").  It appears Eksin has operated on the assumptions that several of the named counterclaim defendants are plaintiffs in the action and that he need not serve them with process.  Those assumptions are both flawed.

*Lidya Holdings Inc., et al. v. Ercin Eksin*
C.A. No. 2021-0110-JRS
January 31, 2022
Page 10

To avoid dismissal, Eksin argues that he gave actual notice of his Counterclaim to the counsel of Counter-Defendants' respective institutions.  But actual notice to counsel is not enough,[32] nor can Eksin ignore the corporate separateness of Counter-Defendants and their institutions.[33]

While this Court affords Eksin leniency as a *pro se* litigant, it cannot override the constitutional requirements of proper service of process and of personal jurisdiction.  For this reason alone, all claims against the Investor Defendants must be dismissed.

## B. Eksin's Claims Fail on the Merits

Eksin brings six counts: (1) shareholder oppression against the Investor Defendants, (2) unjust enrichment against the Investor Defendants, (3) breach of fiduciary duty against the Investor Defendants, (4) breach of the implied covenant of good faith and fair dealing against all Counter-Defendants, (5) wrongful

---

[32] *Nationstar Mortg., Inc.*, 2015 WL 5766775, at *2 ("[T]he Court only may exercise personal jurisdiction over a defendant when service of process is properly effected, regardless of whether or not actual notice is achieved.")

[33] *See, e.g.*, *Culverhouse v. Paulson & Co.*, 133 A.3d 195, 199 (Del. 2016) ("Delaware courts take the corporate form and corporate formalities very seriously.").

termination against Lidya, and (6) injunctive relief against all Counter-Defendants. I address each in turn.

### 1. Count 1—Shareholder Oppression

Eksin's first count is for shareholder oppression. He alleges the "Investor Defendants set on a quest to freeze Counterclaimant out of the Company without any fair compensation."[34] But "[t]here is no standalone remedy for stockholder oppression in Delaware."[35] As a standalone claim, it must be dismissed. To the extent Count 1 overlaps with Eksin's breach of fiduciary duty claim (Count 3), I address it below.

---

[34] Counterclaim ¶ 117.

[35] *Verdantus Advisors, LLC v. Parker Infrastructure P'rs, LLC*, 2020 WL 5951368, at *5 (Del. Ch. Oct. 8, 2020); *see also Nixon v. Blackwell*, 626 A.2d 1366, 1380–81 (Del. 1993) ("It would run counter to the spirit of the doctrine of independent legal significance, and would be inappropriate judicial legislation for this Court to fashion a special judicially-created rule for minority investors when the entity does not fall within those [close-corporation] statutes, or when there are no negotiated special provisions in the certificate of incorporation, by-laws, or stockholder agreements." (citations omitted)).

### 2. Count 2—Unjust Enrichment

In his unjust enrichment claim, Eksin alleges that, "[b]y freezing Counterclaimant out of the Company and summarily demanding that he step down without fair compensation, Investor Defendants have been enriched at Counterclaimant's expense, including by depriving Counterclaimant of the value of his shares and other compensation . . . and diverting such value to themselves."[36] "Unjust enrichment is 'the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience.'"[37] As explained by our Supreme Court, "[t]he elements of unjust enrichment are: '(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and the impoverishment, (4) the absence of justification, and (5) the absence of a remedy provided by law.'"[38]

---

[36] Counterclaim ¶ 121.

[37] *Nemec v. Shrader*, 991 A.2d 1120, 1130 (Del. 2010) (quoting *Fleer Corp. v. Topps Chewing Gum, Inc.*, 539 A.2d 1060, 1062 (Del. 1988)).

[38] *Windsor I, LLC v. CWCapital Asset Mgmt. LLC*, 238 A.3d 863, 875 (Del. 2020) (quoting *Nemec*, 991 A.2d at 1130).

Eksin does not even attempt to plead the basics of an unjust enrichment claim. He fails to allege how the Counter-Defendants were enriched or how he was impoverished. He does not allege that the Counter-Defendants received money or property that belonged to him. His termination did not "depriv[e] [him] of the value of his shares";[39] indeed, Eksin still owns his shares. Nor is his loss of salary an impoverishment that relates to the Investor Defendants' enrichment.[40] Count 2 must be dismissed.

### 3. Count 3—Breach of Fiduciary Duty

Eksin next alleges breach of fiduciary duty, claiming that "Investor Defendants . . . wrongfully ousted Counterclaimant from the Company" and "retailat[ed] against Counterclaimant."[41] The breach of fiduciary claim fails.

---

[39] Counterclaim ¶ 121.

[40] To the extent Eksin is attempting to plead that the Investor Defendants were indirectly enriched by their stock ownership in a company that no longer was obliged to pay Eksin's salary, that claim is derivative. Such a derivative claim cannot succeed here because demand futility has not been pled under Chancery Rule 23.1. Moreover, derivative claims cannot be asserted by *pro se* litigants. *E.g.*, *Kelly v. Fuqi Int'l, Inc.*, 2013 WL 135666, at *7 (Del. Ch. Jan. 2, 2013) ("A derivative action may not be brought *pro se* . . . .").

[41] Counterclaim ¶ 126.

*First*, Eksin has not established that the Investor Defendants owed him fiduciary duties. They are not directors,[42] nor are they majority stockholders.[43] Minority stockholders do not owe fiduciary duties "[a]bsent special circumstances,"[44] such as when their control over the business affairs of the corporation is such that they may be deemed to be controlling stockholders notwithstanding their minority stake.[45] Eksin alleges that, together, the Investor Defendants control a majority of the Board,[46] but his pleading fails to reveal any more than a "mere concurrence of self-interest."[47] The facts as pled do not allow a

---

[42] The Investor Defendants are entities, and a director of a Delaware corporation must "be a natural person." 8 *Del. C.* § 141(b).

[43] Counterclaim ¶ 16.

[44] *In re Dell Techs. Inc. Class V S'holders Litig.*, 2020 WL 3096748, at *18 (Del. Ch. June 11, 2020).

[45] *See Superior Vision Servs., Inc. v. ReliaStar Life Ins. Co.*, 2006 WL 2521426, at *4 (Del. Ch. Aug. 25, 2006) ("A shareholder owes fiduciary duties in two instances: (1) when it is a majority shareholder, owning more than 50 percent of the shares, or (2) when it exercises control over the business affairs of the corporation." (internal quotation marks omitted)).

[46] Resp. to Mot. to Dismiss ("MTD Resp.") (D.I. 61) at 22.

[47] *In re Crimson Expl. Inc. S'holder Litig.*, 2014 WL 5449419, at *15 (Del. Ch. Oct. 24, 2014).

reasonable inference that the Investor Defendants are "connected in some legally significant way—e.g., by contract, common ownership, agreement, or other arrangement."[48]

*Second*, even assuming the Investor Defendants owed fiduciary duties, Eksin does not allege a breach of those duties. It was the Board, not the Investor Defendants as stockholders, who terminated Eksin. Moreover, Eksin does not claim that he was harmed as a *stockholder*; he alleges, instead, that he suffered harm as an *employee*. Such a claim is not redressable through a breach of fiduciary duty claim.[49] If anything, the termination of Eksin as CEO may give rise to a wrongful termination claim, as pled in Count 5.

### 4. Counts 4 and 5—Breach of the Implied Covenant of Good Faith and Fair Dealing and Wrongful Termination

Eksin alleges that Counter-Defendants breached the implied covenant of good faith and fair dealing by "freezing Counterclaimant out of the Company . . .

---

[48] *Dubroff v. Wren Hldgs., LLC*, 2009 WL 1478697, at *3 (Del. Ch. May 22, 2009).

[49] *See Riblet Prods. Corp. v. Nagy*, 683 A.2d 37, 37 (Del. 1996) (holding that fiduciary duties "are not implicated when the issue involves the rights of the minority stockholder *qua* employee").

without fair compensation, cooperation, or assistance" and "[b]y ousting Counterclaimant out of the Company that he built and had full expectations to grow and manage."[50] He also brings a claim for wrongful termination against Lidya, alleging that his termination "was in bad faith and was in retaliation for voicing his concerns about Investor Defendants' wrongful actions."[51]

"The implied covenant, inherent in all agreements, ensures that the parties deal honestly and fairly with each other when addressing gaps in their agreement."[52] Our Supreme Court has admonished that invoking the implied covenant is a "cautious enterprise,"[53] and has emphasized that the implied covenant is "a limited and extraordinary legal remedy."[54] The purpose of the implied covenant in

---

[50] Counterclaim ¶¶ 130–31.

[51] Counterclaim ¶ 135.

[52] *Glaxo Gp. Ltd. v. DRIT LP*, 248 A.3d 911, 919 (Del. 2021).

[53] *Cincinnati SMSA LP v. Cincinnati Bell Cellular Sys. Co.*, 708 A.2d 989, 992 (Del. 1998).

[54] *Oxbow Carbon & Mins. Hldgs., Inc. v. Crestview-Oxbow Acq., LLC*, 202 A.3d 482, 507 (Del. 2019) (quoting *Nemec*, 991 A.2d at 1128).

Delaware is to serve as a contractual gap-filler.[55] But it should not be deployed when "[t]here [is] no gap to fill in the Agreement."[56]

To the extent Eksin attempts to bring an implied covenant claim based on some unspecified contract, it fails because he does not identify a contractual gap for the covenant to fill.[57] And Eksin cannot bring a breach of the implied covenant claim regarding his director status under the Amended and Restated Voting Agreement because that issue was already adjudicated by the emergency arbitrator.[58] Count 4, therefore, must be dismissed.

While the implied covenant claim fails as pled in Count 4, there may be a place for the implied covenant within Eksin's wrongful termination claim as pled in

---

[55] *See Glaxo Gp. Ltd.*, 248 A.3d at 919 ("[T]he court has in its toolbox the implied covenant of good faith and fair dealing to fill in the spaces between the written words.").

[56] *Id.* at 920.

[57] *See, e.g.*, *Reardon v. CANarchy Holdco Corp.*, 2021 WL 2287468, at *3 (Del. Super. Ct. June 4, 2021) ("Plaintiff's implied covenant claim falters for several reasons. First, Plaintiff fails to plead any contractual gap . . . that the implied covenant would operate to fill.").

[58] D.I. 66.

Count 5. Eksin admits—as he must—that he was an at-will employee.[59] Lidya's bylaws provide that officers serve "at the pleasure of the Board of Directors" and "may be removed by the Board of Directors with or without cause."[60] Delaware generally does not recognize the claim of wrongful termination when the employment relationship is at-will.[61]

As with most general rules, there are narrow exceptions to the general rule that an at-will employee may not sue for wrongful termination.[62] Relevant here, in *Pressman*, the Court held that "the [implied] [c]ovenant permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal."[63] As I understand the pled facts,

---

[59] MTD Resp. at 6, 44, 49.

[60] Compl. Ex. E (Lidya Bylaws), Art. III.

[61] *See Torres v. Sussex Cty. Council*, 2014 WL 7149179, at \*2 (Del. Super. Ct. Dec. 8, 2014); *see also E.I. DuPont de Nemours & Co. v. Pressman*, 679 A.2d 436, 437 (Del. 1996) (holding that the at-will doctrine "generally permits the dismissal of employees without cause and regardless of motive").

[62] *See Pressman*, 679 A.2d at 441–42 (setting forth several recognized exceptions).

[63] *Id.* at 437.

Eksin alleges that the Board and a Lidya employee fabricated a harassment claim so that the Board could fire him "for cause" after he criticized the Board's commitment to Lidya.[64] That scenario may implicate *Pressman* and its progeny.[65]

_____

[64] *See* Counterclaim ¶ 135 ("Counterclaimant's termination was in bad faith and was in retaliation for voicing his concerns about Investor Defendants' wrongful actions."); Counterclaim ¶ 82 ("It is evident that Investor Defendants attempted to use this contrived harassment claim to push their own agenda through whatever means possible and gain control of the Company even asking the Company's counsel in the beginning of the investigation whether they can fire Eksin."); Counterclaim ¶¶ 76–77 ("Upon information and belief, this employee [who brought the harassment claim] collaborated with Investor Defendants and Directors of Lidya appointed by the Investor Defendants to create the means for Investor Defendants to gain control over the Company. In fact, Accion and other Investor Defendants used this disagreement to push Eksin out of the Company . . . ."); Counterclaim ¶¶ 72–73 ("Investor Defendants' improper 'freeze-out' actions have been undertaken as part of the improper investigation, done contrary to the rights of Eksin, in dealing with the situation that arose involving claimed harassment by a former employee connected to one of the Investor Defendants and one of [sic] board directors of Lidya—all of which were found to be unfounded as to Eksin. *These actions were untaken after Eksin voiced his concerns about the Investor Defendants' questionable actions during the failed Series B fundraising process.*") (emphasis added); Counterclaim ¶ 80 ("Instead of engaging with Eksin and performing a complete and thorough investigation, Counter-Defendants engaged in secret negotiations without Eksin's involvement or input, all to his severe detriment, as part of what appears to have been a larger plan to cut Eksin out of the Company."). In my view, Eksin has done enough to satisfy notice pleading under Rule 8 with respect to the *factual bases* of his wrongful termination claim, especially considering his *pro se* status. *See, e.g.*, *Johnson v. State*, 442 A.2d 1362, 1364 (Del. 1982) ("[W]e adopt the view that a pro se pleading is judged by a less stringent standard than a pleading or document filed by an attorney.") (internal quotation marks omitted); *Thornton v. Bernard Techs., Inc.*, 2009 WL 426179, at *1 (Del. Ch. Feb. 20, 2009) ("Because this is a *pro se* pleading, it may be judged by a 'less stringent standard' than one filed by an attorney. However, proceeding *pro se* will not

Neither party referred to *Pressman* in their briefs or discussed the role that the implied covenant could play in Eksin's wrongful termination claim against Lidya.  For reasons explained above, the Court requires supplemental submissions on whether, and to what extent, *Pressman* and its progeny might apply to this case.

Of course, the Investor Defendants were not themselves Eksin's employers, nor were they properly served with process, as explained above.  Therefore, Count 4

relieve the Plaintiffs of their responsibility to present and support cogent arguments warranting the relief sought."); *Kelly v. Fuqi Int'l, Inc.*, 2013 WL 135666, at *6 (Del. Ch. Jan. 2, 2013) (explaining in detail how this court evaluates *pro se* pleadings).  Whether *vel non* the claim is legally viable remains to be seen.

[65] *Pressman*, 679 A.2d at 443–44 (holding that the implied covenant applies to at-will employment where "acts of the employer manifesting bad faith or unfair dealing [are] achieved by deceit or misrepresentation in falsifying or manipulating a record to create fictitious grounds to terminate employment"); *see also Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575, at *11 (Del. Ch. May 29, 2020) (same); *Smith v. Scott*, 2021 WL 1592463, at *7 (Del. Ch. Apr. 23, 2021) (same); *SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559, at *9–10 (Del. Ch. Aug. 25, 2021) (citing *Pressman*, *Sheehan* and *Smith* in denying a motion to dismiss where the complaint presents factual allegations that the "cause" offered for termination was pretextual).

must be dismissed against the Investor Defendants both as a matter of process and on the merits.[66]

### 5. Count 6—Injunctive Relief

Finally, Eksin's claim for injunctive relief must be dismissed because it is a remedy dressed up as a cause of action. As this court has explained, "[i]njunctions are a form or relief, not a cause of action."[67] Eksin has not pled any future act for the Court to enjoin, much less a cause of action to which his prayer for injunctive relief would attach. Count 6 fails.

### III. CONCLUSION

For the foregoing reasons, the motion to dismiss all counts asserted against the Investor Defendants is GRANTED. The motion to dismiss Counts 1, 2, 3, 4 and 6 against Lidya is also GRANTED.

---

[66] Count 5 is brought only against Lidya. *See* Counterclaim at 32. To the extent Eksin has attempted in his briefing to sweep the Investor Defendants into Count 5, that effort fails for the reasons stated above.

[67] *Quadrant Structured Prods. Co. v. Vertin*, 102 A.3d 155, 203 (Del. Ch. 2014); *see id.* (dismissing two counts "because they seek remedies rather than assert claims").

The Court requests supplemental briefing regarding the applicability of the implied covenant of good faith and fair dealing to Eksin's claim for wrongful termination against Lidya, as alleged in Count 5. Lidya shall file an opening letter memorandum on this issue, limited to 2500 words, within thirty (30) days of the filing of this Letter Opinion. Eksin shall file an answering letter memorandum, limited to 2500 words, within thirty (30) days of the filing of Lidya's opening letter memorandum. Lidya shall then file a reply letter memorandum, limited to 1500 words, within fifteen (15) days thereafter.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*